THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 22-20184 |
| Plaintiff, | |
| | HON. LAURIE MICHELSON |
| D-2 JOHN DAVID, | |
| Defendant. | |
| _____ / | |

# GOVERNMENT'S AMENDED SENTENCING MEMORANDUM

## INTRODUCTION AND BACKGROUND

For over four years, John David was a corrupt contractor who paid an elected public official to ensure he was awarded construction projects in the Madison Public School District (MDPS). His "pay to play" scheme with the MDPS school board president, Albert Morrison, deliberately bypassed the equitable competitive bidding process in the district. The families of MDPS relied upon Morrison and private sector contractors, like David, to expend taxpayer money without the influence of self-interest. Instead, David and Morrison breached the trust of the community and corruptly lined their pockets.

David conspired with Albert Morrison to carry-out their pay-to-play scheme as follows: John David's company, Emergency Restoration (ER), provides emergency restoration, repair, and reconstruction services. During the time

relevant to the First Superseding Indictment, ER performed work for MDPS. At the same time, Morrison was the president of the MDPS board. In this position, Morrison and the other board members were responsible for approving MDPS expenditures, including construction, repair, and restoration projects. Awarding these contracts required a bidding process unless the project was deemed an emergency.[1]

By the beginning of 2014, David and Morrison had been acquaintances and friends for decades. In January 2014, ER began working on various projects related to MDPS's Edison Elementary school. By the end of August 2014, MDPS paid ER over $1,000,000 for these projects. The Edison Elementary projects were falsely designated "emergencies" thereby avoiding competitive bidding protocols.

In May 2014, Morrison created "Comfort Consulting" and set up a bank account in its name. On May 19, 2014, during the Edison Elementary projects, David began writing checks to Comfort Consulting from ER. David continued writing checks to Comfort Consulting though September 2018, totaling $561,667. *See* Exhibit 1. And, throughout that time, ER continued to receive projects from MDPS. All the projects were designated as "emergencies" with the corrupt intent to avoid a fair and equitable bidding process.

---

[1] MDPS regulations define "emergency" as "a situation where immediate action is required to protect life and limb or to preserve valuable property." Noted examples include fire and flood.

David and Morrison agreed that David would pay Morrison by writing checks to Comfort Consulting and that Morrison would continue to approve awarding MDPS projects to ER using his authority as school board president. On at least 67 occasions over four years, David corruptly paid Morrison over $561,667. And David corruptly received $3,167,275 from MDPS. Morrison used the bribes he received from David to take vacations, pay his living expenses, including credit card and phone bills, and to maintain a marina boat slip.

The government asks that the Court accept the guidelines calculations of the government and the probation department and find that the applicable guidelines range is 87-108 months. And, after considering all relevant factors under 18 U.S.C. § 3553(a), the government requests that the Court impose a sentence of no more than the midpoint of that range which is 97 months.

## SENTENCING GUIDELINES CALCULATION

1. **The Calculation**

   **Base Level - USSG § 2C1.1(a)(2).**

   David was not a public official during the bribery scheme, therefore the base offense level for bribery is 12.

   **More than One Bribe - USSG § 2C1.1(b)(1).**

   This guideline provides for a two-level increase when more than one bribe is paid. The probation department and the government assess this two-level increase

because David made at least 67 bribe payments to Morrison over four years. *See* Exhibit 1. In his objections to the PSR, David argues that this increase does not apply, because the "unique set of facts" amount to a single bribe paid in installments over time.

The following factors are commonly applied to determine if payments constitute multiple bribes or a single bribe under § 2C1.1: (1) whether "the payments were made to influence a 'single action'," (2) "whether the pattern and amount of payments bear the hallmarks of installment payments, such as a regular schedule of payments over a finite period of time toward a fixed final sum, rather than a series of intermittent and varied bribes," and (3) "whether the method for making each payment remains the same." *United States v. Ford*, 2009 WL 2610970, at *2 (6th Cir. 2009)(internal citations omitted); *see also United States v. Hills*, 27 F.4th 1155, 1194 (6th Cir. 2022).

None of these factors support David's objection. To begin, there is no evidence to support the inconceivable scenario that, in May 2014, David agreed to pay Morrison over half a million dollars between 2014 and 2018 for repair and reconstruction projects that were not needed or even contemplated in 2014. Second, the payments by David to Morrison do not follow a pattern in timing or consistent amount other than all are under $10,000. Third, David rewarded Morrison during the same time frame with things of additional monetary value

which do not support the installment payment theory. Those items of value include: the use of a car, gift cards, vacation expenses, and rental payments on Morrison's boat slip.

**More than $550,000 in Bribes-USSG § 2C1.1(b)(2) and § 2B1.1(b)(1)(H).**

USSG § 2C1.1(b)(2) instructs that, when the amount of bribe money received by a public official is more than $6,500, the guideline calculation should be increased by the number of levels in the loss table included in USSG §2B1.1. In this case, the bribe total is $561,667 which results in a 14-level increase. USSG § 2B1.1(b)(1)(H).

Based on David's objections to the PSR, the government anticipates he will object to this 14-level increase. David's argument seems to be two-fold: (1) the money ER received for work done on Edison Elementary projects, $1,080,008, should not be included in calculating how much he illegally received from MDPS; and (2) not all the money he paid Morrison was for work done in Morrison's district.

On August 6, 2023, David provided invoices for work at Edison Elementary in early 2014 before the Comfort Consulting bank account was opened. David's position is that the vast majority of the work ER did at Edison Elementary was invoiced before his corrupt agreement with Albert Morrison. According to the government's investigation, the first payment to ER for Edison Elementary

projects was on January 14, 2014, and payments continued through August 2014, well after David started making payments to Morrison's Comfort Consulting bank account.

| Invoice # | Invoice Date | Bill To | Job Site | Check # | Amount |
|---|---|---|---|---|---|
| 13351 | 1/14/2014 | MDPS | Edison Elementary | 77562 | $2,800.00 |
| 13332 | 1/17/2014 | MDPS | Edison | 77522 | $1,960.00 |
| 35954 | 2/19/2014 | MDPS | Edison | 77683 | $497,500.00 |
| 13403 | 5/1/2014 | MDPS | Edison | 78087 | $825.00 |
| 13369 | 5/1/2014 | MDPS | Edison | 78088 | $572,868.45 |
| 13475 | 7/16/2014 | MDPS | Edison Elementary | 78705 | $1,195.00 |
| 13501 | 7/29/2014 | MDPS | Edison Elementary | 78705 | $2,200.00 |
| 13508 | 8/28/2014 | MDPS | Edison Elementary | 78850 | $660.00 |
| **Total** | | | | | **$1,080,008.45** |

Morrison opened his Comfort Consulting account just four months after the Edison Elementary projects began: in May 2014. David began writing checks to Comfort Consulting on May 19, 2014. So, the sine qua non of their scheme occurred during the Edison Elementary projects and the payments delineated above. In addition, during the government's investigation, a MDPS board member and the MDPS business manager recalled that ER worked on the Edison projects because Morrison knew John David. Accordingly, the evidence supports the conclusion that Comfort Consulting was created to facilitate the "pay to play" agreement established between David and Morrison.

6

As for David's claim that some of his payments to Morrison were made in exchange for Morrison's assistance in obtaining work for David outside of MDPS, he offers no evidence regarding the value of the services Morrison provided or what specific payments to Comfort Consulting correspond to projects outside Morrison's district. Even if David provided such facts, the payments to Morrison were still made in exchange for Morrison's influence while he was an elected public official. The corruption and illegality of all the payments by David to Morrison is evidenced by Morrison's failure to disclose any of David's payments to the school board. At the July 2017 MDPS public school board meeting, the following conversation took place between Morrison and another board member:

> Board Member: Now the question…is do you have any financial ties to Emergency Restoration?
>
> MORRISON: None whatsoever.
>
> Board Member: Alright, so you have no financial ties to them whatsoever?
>
> MORRISON: No financial ties to Emergency Restoration whatsoever.
>
> Board Member: You don't receive any money from them whatsoever.
>
> MORRISON: No money from them whatsoever.

See First Superseding Indictment, ¶ 49 (ECF No. 14, PageID.103).

At the time of this lie, David had already paid Morrison over $475,000. If any portion of those payments were not corrupt, as David alleges, Morrison would

have disclosed at least a portion of their arrangement. Instead, they both knew their agreement was corrupt and illegal, and they knew they had to keep it secret.

### Offense Involves an Elected Public Official – USSG § 2C1.1(b)(3)

At all times relevant to the charges in the First Superseding Indictment Morrison was the MDPS elected school board president. This 4-level increase applies.

**2.   Conclusion**

David has no adult criminal convictions and is in criminal history category I. (PSR ¶ ¶ 35-36). David has accepted responsibility for his offenses and is entitled to a 2-level reduction or acceptance of responsibility. USSG § 3E1.1(a). The government also believes the additional one-level reduction for acceptance of responsibility is appropriate and moves the Court to include it. USSG § 3E1.1(b). The government calculates an adjusted offense level of 29 and a criminal history of I for a guidelines range of 87-108 months. The government recommends a sentence of no more than 97 months.

### APPLICATION OF 18 U.S.C. § 3553

To determine the sentence to impose, this Court must consider the familiar statutory factors listed in §3553(a)(1)-(7). One of those factors is the advisory range set by the Sentencing Guidelines and another is the Commission's policy statements.  *See* 18 U.S.C. §3553(a)(4), (a)(5). Although the Sentencing

Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38 (2007).

A thorough consideration of all sentencing factors set forth in 18 U.S.C. § 3553(a) dictates that the most appropriate sentence is within the applicable guidelines range of 87-108 months, and the government recommends that David's sentence be no more than 97 months.

1. **The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

David's offenses were repeated at least 67 times over more than four years. They compromised the integrity of a school district that benefited from government funded programs intended to support and promote educational opportunities for children. David placed his personal enrichment above the interests of those children, their families, and the community. David and Morrison corrupted a process for awarding construction and repair contracts in the MDPS, and the impact of this conduct will be felt by the district for a long time. *See* Exhibit 3, Victim Impact Statement.

There is no evidence that David was financially distressed at any point in the four years he paid Morrison to secure work in MDPS. His actions were driven by pure greed. David could have participated in fair bidding practices for the contracts

he cheated to obtain. Instead, he uprooted the essential trust between elected public school officials and the families the officials served.

A sentence between 87 and 97 months appropriately recognizes the seriousness of this corruption scheme.

**2.     The History and Characteristics of the Defendant**

David is smart and well connected in the construction and restoration community. Considering his many years in the business, David had every opportunity to succeed legitimately. Unlike many of the criminal defendants in our district who resort to crime out of financial desperation, David did not conceive this scheme in the face of significant economic privation. The choices David made over four years were driven entirely by greed and self-interest.

As illustrated by the following passages from Victim Impact Statements, David is responsible for damaging the faith the Madison Schools community had in their school board, the process for awarding contracts, and the judicious use of taxpayer funds:

> I could never figure out how John David's company kept getting all of the bids to do work at the Madison District schools. Then I became aware there was never any bids and it was always considered an emergency…Our district is not a very wealthy district. This amount of money would have made a big difference in the lives and education of our students.

*See* Exhibit 2[2], Victim Impact Statement.

> As President of the Board of Education of Madison District Public Schools, the extent of the public corruption that Mr. David engaged in with Mr. Albert Morrison breaks my heart.
>
> The school district is a small school district located in Oakland County. We receive children from the City of Madison and many surrounding school districts, including the Detroit Public School Community District. As a result of Mr. David's corruption, our small community has been split and the school district has developed a reputation that It is lose with its finances, allowing individuals to become rich at the expense of our children and those of the surrounding school district who have chosen to send their children here.
>
> Our attorneys have spent numerous hours dealing with the fallout of Mr. David's actions, including advising on the issuance of the new bonds, dealing with raucous crowds at board meetings and parsing through their allegations in support of Mr. David, working with the board of education members to detect and report the fraud that enriched Mr. David to the State and advising on the impact of the fraud that Mr. David engaged in with others.

*See* Exhibit 3, Victim Impact Statement.

**3.     The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, To Promote Respect for the Law, and to Provide Just Punishment for the Offense**

A sentence between 87 and 97 months would reflect the seriousness of the offense, promote respect for the law, and adequately punish David for his criminal behavior. David's conduct involved repeated acts over a four-year period. This conduct violated the trust MDPS and its families placed in local contractors hired

---

[2]The Victim Impact Statements received by the government as of August 3, 2023, are submitted as Exhibits 2 - 5.

by MDPS, like David. It also compromised the integrity of the school board, and the protocols intended to ensure that construction, repair, and restoration contracts were fairly awarded.

4.  **The Need to Afford Adequate Deterrence to Criminal Conduct and To Protect the Public from Further Crimes of the Defendant**

A sentence of 87 to 97 months is necessary to deter others as well as to protect the public. Federally funded programs are especially vulnerable to corruption. Billions of federal dollars are overseen by public officials and provided to the private sector in this district and across the country. Public officials and private sector employees can be tempted to use their positions and access to federal monies for their own benefit. These individuals need to know there are significant consequences for violating the public trust. Public officials and private sector employees, who are inclined to engage in corrupt practices, are capable of being deterred and word of significant penalties for such conduct travels quickly and widely within professional and personal networks. A sentence within the guideline range would send the message that there are serious consequences for public corruption and, accordingly, should have a significant deterrent effect. As noted in *United States v. Peppel*, 707 F.3d 627 (6th Cir. 2013), because white-collar crimes are "'more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence.'" *Peppel*, 707 F.3d at 637 (quoting *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir.

2006)). And, as aptly stated by a federal court plagued by corruption in its district:

> Unlike some criminal justice issues, the crime of public corruption can be deterred by significant penalties that hold all offenders properly accountable. The only way to protect the public from the ongoing problem of public corruption and to promote respect for the rule of law is to impose strict penalties on all defendants who engage in such conduct, many of whom have specialized legal training or experiences. Public corruption demoralizes and unfairly stigmatizes the dedicated work of honest public servants. It undermines the essential confidence in our democracy and must be deterred if our country and district is ever to achieve the point where the rule of law applies to all --- not only to the average citizen, but to all elected and appointed officials.

*United States v. Spano,* 411 F.Supp.2d 923, 940 (N.D. Ill. 2006).

**5.    The Need to Provide the Defendant with Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

There is no need to adjust David's sentence below the guideline range under §3553(a)(2)(D) based upon his medical conditions or as a variance as requested in a recent motion submitted to the Court.

The government acknowledges that David's health issues are complicated, and he is on several medications to manage them. However, the Bureau of Prisons (BOP) will be prepared to manage David's conditions. Prior to his designation, the BOP will review David's medical conditions and assign him a classification according to the "Care Level Classification for Medical and Mental Health Conditions or Disabilities." *See* https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf. The classification guide ensures that each

13

inmate is assigned to the BOP institution that can best meet their health care needs. As evident from the classification guide, the Bureau of Prisons is capable of handling even the most complicated and severe medical issues.

To assure the Court that David's conditions will be carefully reviewed and handled appropriately by the BOP, the Regional Medical Director for the BOP provided a letter assuring that David's conditions can be properly managed while he is incarcerated with the BOP. *See* Exhibit 6, Letter from BOP Regional Medical Director (filed under seal). The Medical Director's letter further explains David's probable classification under the Care Level Classification Guide and likelihood of designation to a Medical Referral Center.

Because David's conditions can be managed by the Bureau of Prisons, this factor, as well, justifies a sentence within the 87-97 months.

## 6. The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who have been Found Guilty of Similar Conduct

As stated above, while the sentencing guidelines are advisory, they remain the sole means available for assuring some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of 1984. Reference to the guidelines, coupled with careful consideration of the 3553(a) factors particularly relevant to an individual defendant, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in

judicial assignments. Accordingly, the Supreme Court has held that "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process" to assure fair, proportionate, and uniform sentencing of criminal offenders. *Gall,* 552 U.S. at 50 n.6. The PSR notes that the average sentence at an offense level of 25 and criminal history category I is 30 months; however, this case involves aggravating circumstances not considered by the guidelines. First, David assisted a school board president in breaching the most essential obligations of school board members as outlined in the MDPS governing bylaws:

- Render all decisions based on the available facts and independent judgment, and refuse to surrender that judgment to individuals or special interest groups.

- Avoid being placed in a position of conflict of interest, and refrain from using their Board positions for personal partisan gain.

- Remember always that their first and greatest concern must be for the educational welfare of the students attending the public schools.

- No Board member shall use his/her position as a Board member to benefit either himself/herself or any other individual . . . apart from the total interest of the School District.

- When a member of the Board determines that the possibility of a conflict of interest exists, s/he should, prior to the matter being considered, disclose his/her interest (such disclosure shall become a matter of record in the minutes of the Board), and thereafter shall abstain from participation in both the discussion of the matter and the vote thereon.

- Board members shall not accept any money, goods, or services with a value in excess of the amount established annually by the State Department of

>Instruction ($44 within any one (1) month period as of December 31, 2004) from any person who does business or seeks to do business of any kind with the District.

Second, David and Morrison perpetrated their corruption in a manner that makes the financial loss to the district unquantifiable. Due to the nature of their scheme, which obliterated the competitive bidding process, it is impossible to determine the additional amount of taxpayer money the district spent on David's contracts instead of on contracts awarded through a competitive bidding process.

Third, David was given the opportunity to disclose his payments to Morrison during an audit by the State of Michigan. Instead, he elected to lie to the State of Michigan auditors.

## **CONCLUSION**

Considering the nature of John David's conduct, the government submits that there are no §3553(a) factors which militate against imposition of a sentence less than 87 months; to the contrary, the §3553(a) factors, on balance, support the imposition within the range of 87 to 97 months. The government recommends that the Court impose such a sentence.

>Respectfully submitted,
>
>DAWN N. ISON
>UNITED STATES ATTORNEY

                    s/*KAREN L. REYNOLDS*

Assistant United States Attorney
211 W. Fort St., Ste. 2001
Detroit, Michigan 48226
Phone: 313-226-9672
Email: karen.reynolds@usdoj.gov
P31029

s/*SARAH RESNICK COHEN*

Assistant United States Attorney
211 W. Fort St., Ste. 2001
Detroit, Michigan 48226
Phone: (313) 226-9637
Email: sarah.cohen@usdoj.gov
P51968

Dated: August 8, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2023, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record. Because Exhibit 6 was filed under seal, I emailed a copy of the exhibit to defendant's attorney:

Robert M. Morgan
morgancrdefense@ameritech.net

s/ *SARAH RESNICK COHEN*
Assistant United States Attorney